IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In Re:<br><br>ARROW TRUCKING COMPANY<br><br>Debtor.<br>_____<br><br>JEFFREY SMITH, TIMOTHY KLECK<br>and JAY HEATH, Individually and as Class<br>Representatives,<br><br>Plaintiffs,<br><br>vs.<br><br>ARROW TRUCKING COMPANY<br>CAROL PIELSTICKER and DOUGLAS<br>PIELSTICKER<br><br>Defendants. | Case No. 10-10041-R<br><br><br><br><br><br><br><br><br><br>Adversary No. _____ |

## ADVERSARY CLASS ACTION COMPLAINT

Jeffrey Smith, Timothy Kleck and Jay Heath ("Plaintiffs")[1], individually and as class representatives for all similarly situated former employees of Debtor/Defendants Arrow Trucking ("Arrow") and Defendants Carol and Douglas Pielsticker (collectively "Debtor/Defendants"), by and through their undersigned counsel, bring this Complaint and allege as follows:

## NATURE OF ACTION

1. Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath and all other similarly situated members of the class they seek to represent, were employees of Debtor/Defendants

---

[1] In addition to the named Plaintiffs, undersigned counsel has been retained by approximately 175 other former employees.

Arrow Trucking Company ("Arrow") and Defendants Carol and Douglas Pielsticker (collectively, "Debtor/Defendants"), who were terminated without cause as part of, or as a result of, plant shutdowns and/or mass layoffs by and at Arrow's facilities. Arrow violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act") by failing to give the Plaintiffs and other persons similarly situated, who are members of the Class the Plaintiffs seek to represent, at least 60 days prior notice of termination of their employment as required by the WARN Act. As a consequence, the Plaintiffs, and other similarly situated former employees, are entitled to recover from the Arrow, under the WARN Act, their wages and other employee benefits for 60 working days following the termination of their employment, which wages and benefits have not been paid. In Counts Three through Five, Plaintiffs and other similarly situated former employees seek damages against and Debtor/Defendants for failing to: pay wages; forward medical premiums, 401K contributions, and child support payments that had been deducted from employee paychecks, or reimburse expenses incurred prior to closure.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157, 1331, 1334 and 1367.

3. This is a case proceeding under 28 U.S.C.§ 157 (b)(2)(A), (B) and (O).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

## PARTIES

5. The Plaintiffs, Jeffrey Smith, Timothy Kleck and Jay Heath and other similarly situated members of the proposed class they seek to represent, had been employed by the Debtor/Defendants, until their termination on various dates beginning on or about December 21, 2009.

-3-

6. The Plaintiffs bring this action on their own behalf pursuant to, *inter alia*, the WARN Act, 29 U.S.C. § 2104(a)(5), [ERISA], various state wage laws, and Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of all other persons similarly situated.

7. Debtor/Defendants Arrow is, upon information and belief, respectively, an Oklahoma corporation, with its headquarters in Tulsa, Oklahoma that on or about January 7, 2010 filed a voluntary petition for relief under Title 7 of the United State Code (the "Bankruptcy Code").

8. Defendant Carol Pielsticker is the Chairman of the Board of Arrow and is a resident of Oklahoma.

9. Defendant Douglas Pielsticker was the CEO of Arrow at all relevant times, and is a resident of Oklahoma.

**FACTUAL ALLEGATIONS**

10. Debtor/Defendants employed in excess of 1400 employees at facilities throughout the United States.

11. On or about December 21, 2009, Debtor/Defendants stranded drivers throughout the Country by informing them that their employment was terminated and that they should drop vehicles at the nearest freightliner location and figure out how to get home.

12. Debtor/Defendants gave no prior notice of the December 21 shutdown, failed to fund credit cards for fuel, or provide transportation home.

13. Debtor/Defendants knew or should have known at least 60 days prior to the December 21, 2009 lay-offs that it was likely that Debtor/Defendants would be required to shutdown or have significant mass lay-offs because of the economic climate and business trends.

-3-

-4-

14. Debtor/Defendants willfully, negligently or recklessly failed to give adequate notice of the potential shutdown/layoffs as required by the WARN Act.

15. Debtor/Defendants failed to: pay wages; forward medical premiums, 401K contributions, and child support payments that had been deducted from employee paychecks, or reimburse expense to Named Plaintiffs and other similar situated former employees for at least the final three to four weeks of employment in violation of various federal and state laws, including, *inter alia,* ERISA, and Oklahoma Stat. 40-5:165.1 *et seq*.[2]

16. Arrow's CEO, Douglas Pielsticker, and Chairman Carol Pielsticker, willfully and intentionally, directed employees not to: pay wages; forward medical premiums, 401K contributions, withholding taxes, and child support payments that had been deducted from employee paychecks; or reimburse expenses.

17. CEO Douglas Pielsticker and Chairman Carol Pielsticker suffered and permitted employees to work for Arrow knowing that Arrow was unable at the time and would be unable to: pay wages; forward medical premiums, 401K contributions, withholding taxes, and child support payments that had been deducted from employee paychecks; or reimburse expenses.

**CLASS ALLEGATIONS**

18. Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath, on behalf of themselves and members of the Class, repeat and re-allege the allegations of paragraphs 1 through 17 as though fully restated herein.

---

[2] Arrow's employees were residents of various States, and may also or alternatively be covered by other States' wage payment or garnishment/child support laws. This may ultimately necessitate the creation of sub-classes to determine liability/damages. However, Plaintiffs believe the number of employees in each State will remain sufficiently large enough to satisfy Rule 23 factors for Class Certification on each of these claims.

-4-

PHIL1 902495-1

-5-

A.   **DEFINITION OF THE CLASS**

19.   Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath and the other similarly situated former employees constitute a class within the meaning of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

20.   The Class is defined as all of those employees who were employed by the Arrow (in facilities with greater than 50 employees), and who became "affected employees" because they suffered "employment losses" as a direct and proximate result of the plant closing and/or mass layoffs in December 2009 or thereafter, and to whom Arrow failed to provide notice in compliance with the WARN Act and/or failed to pay wages; forward medical premiums, 401K contributions, withholding taxes, and child support payments that had been deducted from employee paychecks; or reimburse expenses.

B.   **NUMEROSITY**

21.   The Class is so numerous as to render joinder of all members impracticable as there are over 1400 former employees believed to be in the Class.  The identities of a majority of the Class members are presently unknown but are ascertainable through appropriate discovery.

C.   **EXISTENCE AND PREDOMINANCE OF COMMON ISSUES**

22.   Common questions of law and fact are applicable to all members of the Class.

23.   The common questions of law and fact arise from and concern the following facts and actions:

   a.   all Class members enjoyed the protection of the WARN Act;

   b.   all Class members were employees of the Arrow;

   c.   Arrow terminated the employment of all the members of the Class;

   d.   Arrow terminated the employment of the members of the Class without providing at least 60 days' prior written notice as required by the WARN Act; and

-6-

  e. Arrow failed to pay wages to the Class members and failed to provide other employee benefits for the 60 working day period following the respective terminations of their employment.

  f. All Defendant's failed to pay wages; forward medical premiums, 401K contributions, withholding taxes, and child support payments that had been deducted from employee paychecks; and/or reimburse expenses.

24. The questions of law and fact common to the members of the Class, as above noted, predominate over any questions affecting only individual members, and thus, this class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**D.** **<u>TYPICALITY</u>**

25. Plaintiffs' Jeffrey Smith, Timothy Kleck and Jay Heath's claims are typical of the claims of other members of the Class.  All such claims arise out of the Debtor/Defendantss' failure to provide notice under the WARN Act and its failure to timely disclose to employees that they would be laid off as a result of the plant closing and/or mass layoffs as well as Debtor/Defendants' failure to pay wages; forward medical premiums, 401K contributions, withholding taxes and child support payments that had been deducted from employee paychecks; or reimburse expenses.

26. Plaintiffs and other Class members have suffered a common injury arising out of the Debtor/Defendants' common course of conduct as alleged herein.

**E.** **<u>ADEQUATE REPRESENTATION</u>**

27. Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath will fairly and adequately protect and represent the interests of the Class and have no interest antagonistic to or in conflict with those of other Class members.

28. Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath have the time and resources to prosecute this action and have retained qualified counsel who have had extensive

experience in matters involving employee rights, the WARN Act, ERISA, state wage laws, class actions, and federal court litigation. Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath intend to prosecute this action vigorously for the benefit of the class.

**F.      SUPERIORITY**

29.     A class action is superior to other available methods for a fair and efficient adjudication of this controversy because individual joinder of all members of the Class is impractical. Furthermore, damages suffered by members of the Class may be relatively small when compared to the expense and burden of individual litigation, which would make it difficult or impossible for individual members of the Class to obtain relief. The interests of judicial economy favor adjudicating the claims of the Class on a classwide basis rather than an individual basis.

**G.      RISKS OF INCONSISTENT OR VARYING ADJUDICATION**

30.     Class treatment is proper in this proceeding in order to avoid inconsistent or varying adjudications with respect to individual Class members. Separate actions by individual members of the Class would create a risk that adjudication of disputed issues of law or fact as to some of the former non-bargaining unit employees would be binding upon other Class members not party to the adjudication, or would otherwise substantially impair or impede their ability to protect their interests.

31.     Pursuant to Fed. R. Civ. P. 23(a), the Class meets all the requirements for class certification.

32.     Class certification is also authorized by the WARN Act, 29 U.S.C. § 2104 (a)(5).

**FIRST CLAIM**

**(WARN Act Claim of the Named Plaintiffs Against Arrow)**

33. The Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of paragraphs 1 through 32 as if fully restated herein.

34. Plaintiffs bring this action pursuant to 29 U.S.C. § 2104(a)(5).

35. At all relevant times, Arrow had more than 100 full-time employees within the United States.

36. At all relevant times, Arrow employed more than 100 employees who, in the aggregate, worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

37. At all times relevant, Arrow was an "employer" as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639.3(a).

38. On or about December 2009 and thereafter, Arrow effected one or more "plant closings" or "mass layoffs," as those terms are defined by 29 U.S.C. § 2101(a)(2) and (3).

39. The complete shutdown of the offices as "facilities or operating units" constitutes a "plant closing" within the meaning of 29 U.S.C. § 2101(a)(2), making all persons "affected employees" as a direct and proximate result of the failure to give notice as required under the WARN Act.

40. Alternatively, layoffs resulted in an employment loss of: more than 1/3 of the Arrow's employees, at pertinent "single sites of employment," and as such constituted "mass layoffs" within the meaning of 29 U.S.C. § 2101(a)(3) in that at least 33% of the total employees (excluding any part-time employees) and at least 50 employees (again excluding any part-time employees) experienced an "employment loss" at single sites of employment; or at least 500 employees (company-wide).

41. Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath were longtime employees of Arrow.

42. Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath were laid off on or about December 21, 2009 and thereafter without cause on their part as part or as the reasonably foreseeable consequence of a plant closing and/or mass layoffs ordered by Arrow and are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5).

43. The plant closings and/or mass layoffs resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(6), at one or more single sites of employment. The Arrow failed to give written notice of the plant closing and/or mass layoffs to the "affected employees" prior to the actual date of the closings and/or layoffs.

44. The WARN Act required that Arrow give Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath at least 60 days prior written notice of termination of employment.

45. Prior to the termination of employment, the named Plaintiffs did not receive written notice from Arrow that complied with the requirements of the WARN Act.

46. Arrow failed to pay Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following the respective terminations of their employment.

47. Arrow also failed to make pension and 401(k) contributions as required, and failed to provide health insurance coverage and other employee benefits under ERISA to the Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath for 60 calendar days from and after the dates of the respective terminations of their employment.

48. Arrow's failure to provide Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath with at least sixty (60) days prior written notice of the termination of employment was a

violation of federal law, the WARN Act. The WARN Act specifically provides employers that violate the WARN Act are liable for "back pay" for each day of violation. 11 U.S.C. § 2104(a)(i)(A).

49. Because of Arrow's failure under the WARN Act, Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath are entitled to payment for their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for "the period for the violation, up to a maximum of sixty (60) days." 11 U.S.C. § 2104(a)(1).

50. As a result of Arrow's violation of the WARN Act, Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath have been damaged in amounts equal to the sum of: (a) their respective lost wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension contributions and 401(K) contributions for 60 working days; (b) the health and medical insurance and other fringe benefits under the Employee Retirement Income Security Act ("ERISA") that they would have received or had the benefit of receiving, for a period of 60 working days after the date of their termination; (c) the medical expenses incurred during such period by them that would have been covered and paid under the Arrow's employee benefit plans had that coverage continued for that period; and (d) interest for the time value of the lost wages and benefits.

**SECOND CLAIM**

**(WARN Act Claim of Other Similarly Situated Employees Against Arrow)**

51. Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath on behalf of themselves and other employees of Debtor/Defendants who were similarly situated, repeat and re-allege the allegations of paragraphs 1 through 50 as if fully restated herein.

52. At or about the time that the Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath were discharged or shortly thereafter, Arrow also discharged hundreds of other employees who are not the named Plaintiffs ("Other Similarly Situated Former Employees") and who worked for the Arrow.

53. Pursuant to 29 U.S.C. § 2104(a)(5), the Plaintiffs Jeffrey Smith, Timothy Kleck and Jay Heath assert the claims raised in this proceeding on behalf of each of the Other Similarly Situated Former Employees for them or their benefit.

54. Each of the Other Similarly Situated Former Employees is similarly situated to the named Plaintiffs in respect to their rights under the WARN Act.

55. At all relevant times, Arrow employed more than 100 employees who, in the aggregate, worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

56. At all times relevant, each Arrow were an "employer" as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639.3(a).

57. In December 2009 or thereafter, Arrow effected one or more "plant closing" or "mass layoffs," as those terms are defined by 29 U.S.C. § 2101(a)(2) and (3).

58. The complete shutdown of the offices as "facilities or operating units" constitutes a "plant closing" within the meaning of 29 U.S.C. § 2101(a)(2), making all persons "affected employees" as a direct and proximate result of the failure to give notice as required under the WARN Act.

59. Alternatively, the layoffs by Arrow resulted in an employment loss of more than 1/3 of the Arrow' employees, at pertinent "single sites of employment," and as such constituted a "mass layoff" (or layoffs) within the meaning of 29 U.S.C. § 2101(a)(3) in that at least 33% of

the total employees (excluding any part-time employees) and at least 50 employees (again excluding any part-time employees) experienced an "employment loss" at single sites of employment; or at least 500 employees (company-wide).

60. Arrow discharged each of the Other Similarly Situated Former Employees in December 2009 or thereafter without cause on his or her part as part of a plant closing and/or mass layoffs.

61. The plant closings and/or mass layoffs resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(6), at one or more single sites of employment. The Arrow failed to give written notice of the plant closings and/or mass layoffs to the "affected employees" as required by the WARN Act, 29 U.S.C. § 2102, prior to the actual date of the closings and/or mass layoffs.

62. Arrow are required by the WARN Act to give each of the Other Similarly Situated Former Employees at least 60 days prior written notice of the termination of their employment.

63. Prior to the termination of their employment, the Other Similarly Situated Former Employees did not receive written notice from Arrow that complied with the requirements of the WARN Act.

64. Arrow failed to pay the Other Similarly Situated Former Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following the respective terminations of their employment.

65. Arrow also failed to make the pension and 401(k) contributions and to provide health insurance coverage and other employee benefits under ERISA to the Other Similarly

Situated Former Employees for 60 days from and after the dates of the respective terminations of their employment.

66.     Arrow's failure to provide the Other Similarly Situated Former Employees with at least sixty (60) days prior written notice of the termination of their employment was a violation of federal law, the WARN Act.  The WARN Act specifically provides employers that violate the WARN Act are liable for "back pay" for each day of violation.  11 U.S.C. § 2104(a)(i)(A).

67.     Because of Arrow's failure under the WARN Act, the Other Similarly Situated Former Employees are entitled to payment for their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for "the period for the violation, up to a maximum of sixty (60) days." 11 U.S.C. § 2104(a)(1).

68.     As a result of Arrow's violation of the WARN Act, the Other Similarly Situated Former Employees, have been damaged in amounts equal to the sum of: (a) their respective lost wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension contributions and 401 (k) contributions for 60 working days; (b) the health and medical insurance and other fringe benefits under the Employee Retirement Income Security Act ("ERISA") that they would have received or had the benefit of receiving, for a period of 60 working days after the dates of the respective terminations of their employment; (c) the medical expenses incurred during such period by such persons that would have been covered and paid under the Arrow' employee benefit plans had that coverage continued for that period; and (d) interest for the time value of the lost wages and benefits.

**THIRD CLAIM**

**(Wage Law Claim of Named Plaintiffs and Other Similarly Situated Employees Against All Debtor/Defendants)**

69. The Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of paragraphs 1 through 68 as if fully restated herein.

70. Debtor/Defendants failed to: pay wages; forward medical premiums, 401K contributions, and child support payments that had been deducted from employee paychecks, or reimburse expense to Named Plaintiffs and other similar situated former employees for at least the final three to four weeks of employment in violation of Oklahoma Stat. 40-5:165.1 *et seq*.

71. Arrow's CEO, Douglas Pielsticker and Director Carol Pielsticker, willfully and intentionally directed employees not to: pay wages; forward medical premiums, 401K contributions, and child support payments that had been deducted from employee paychecks, or reimburse expenses.

72. CEO Douglas Pielsticker and Director Carol Pielsticker suffered and permitted employees to work for Arrow knowing that Arrow was unable at the time and would be unable to: pay wages; forward medical premiums, 401K contributions, and child support payments that had been deducted from employee paychecks, or reimburse expenses.

73. Arrow is an "employer," liable under Okla. Stat. 40-5:165.1 *et seq*.

74. CEO Doug Pielsticker and Director Carol Pielsticker are "employers," liable under Okla. Stat. 40-5:165.1 *et seq*.

**FOURTH CLAIM**

**(ERISA Claim of Named Plaintiffs and Other Similarly Situated Employees Against All Debtor/Defendants)**

75. The Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of paragraphs 1 through 74 as if fully restated herein.

76. Debtor/Defendants failed to forward medical premiums and 401K contributions that had been deducted from employee paychecks of named plaintiffs and other similarly situated employees for at least the final three to four weeks of employment in violation of ERISA.

77. Upon information and belief Douglas Pielsticker and Carol Pielsticker are "fiduciaries" as defined by ERISA for Arrow's medical plans and 401K plans.

78. Arrow's CEO, Douglas Pielsticker and Director Carol Pielsticker, willfully and intentionally directed employees not to forward medical premiums and 401K contributions in violation of ERISA.

79. Defendants Douglas Pielsticker and Carol Pielsticker are individually liable under ERISA for their actions.

**FIFTH CLAIM**

**(Garnishment/Child Support Claim of Named Plaintiffs and Other Similarly Situated Employees Against All Debtor/Defendants)**

80. The Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of paragraphs 1 through 79 as if fully restated herein.

81. Debtor/Defendants failed to forward child support payments that have been deducted from employee paychecks.

82. Defendants Douglas Pielsticker and Carol Pielsticker willfully and intentionally directed employees not to forward child support payments that had been deducted from other employee paychecks.

-15-

83. Defendants Douglas Pielsticker and Carol Pielsticker are individually liable under Oklahoma's child support/wage garnishment law (56 Okla. Stat. §240 et seq. [3])

WHEREFORE, the Plaintiffs and the Other Similarly Situated Former Employees, as the members of the Class they seek to represent, demand judgment, against Debtor/Debtor/Defendants as follows:

A. An Order from Court allowing and directing payment of an administrative expense claim on behalf of each affected person, in an amount including, but not limited to, the value of fair and paid wages and benefits, salary, commissions, bonuses, accrued holiday and vacation pay, pension and 401(k) contributions and the value of health insurance coverage and other employee benefits which the Debtor/Debtor/Defendants failed to provide for sixty (60) days following the termination of the employment of these employees after the Petition Date;

B. A money judgment in favor of the Plaintiffs and each Other Similarly Situated Former Employee, equal to the sum of: (a) unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay and pension and 401(k) contributions for 60 working days; (b) the benefit of health and medical insurance and other fringe benefits under ERISA for 60 working days; and (c) any medical or other expenses incurred during the 60 working days since the respective terminations of their employment that would have been covered and paid under Premium Protein's employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 28 U.S.C. § 2104 (a)(1)(A);

C. Allowing Plaintiffs and each Other Similarly Situated Former Employee (i) as to all employees terminated prior to the Petition Date, a priority unsecured claim as to the first

---

[3] As noted previously regarding wage laws, employees of Arrow are residents of many states and Arrow as well as the Pielstickers may be liable under other state garnishment/child support laws - - both civilly and/or criminally.

-17-

$10,950 or any higher priority amount as may be allowed, in respect of such sum and a general unsecured claim in respect of the balance of such sum;

D. Money damages to third party beneficiaries of Plaintiffs and other similarly situated former employees, including but not limited to, 401k and medical plans, federal, state and local tax authorities, as well as ex-spouses and children due payments under state garnishment/child support laws.

E. Certification that the Plaintiffs and the Other Similarly Situated Former Employees constitute a single class;

F. Interest as allowed by law on the amounts owed under the preceding paragraphs;

G. An allowance for the Plaintiffs and the Other Similarly Situated Former Employees as an administrative priority claims pursuant to 11 U.S.C. § 507(b), reasonable attorneys' fees and the costs and disbursements incurred in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. 2104 (a) (6); and

Such other and further relief as this Court may deem just and proper for the time of the lost wages and benefits.

-18-

Dated:  January 12, 2010 /s/ Stephen J. Moriarty
Stephen J. Moriarty, OBA #6410
Kevin R. Donelson, OBA #12647
FELLERS, SNIDER, BLANKENSHIP,
BAILEY & TIPPENS, P.C.
100 N. Broadway, Suite 1700
Oklahoma City, OK 73102
Telephone:  (405) 232-0621
Facsimile: (405) 232-9659
E-Mail: smoriarty@fellerssnider.com
E-Mail:  kdonelson@fellerssnider.com


And

Charles A. Ercole, Esquire
Gianna M. Karapelou, Esquire
Maura E. McKenna, Esquire
(Pro Hac Vice Admissions Pending)
Klehr, Harrison, Harvey, Branzburg, LLP
1835 Market St., Suite 1400
Philadelphia, PA 19103

COUNSEL FOR NAMED CLAIMANTS
 AND OTHERS SIMILARLY SITUATED